Michelle HANEBUTH, as Personal Representative of the Estate of Douglas M. Stuart & Estate of Donevan Harris, Plaintiff,

v.

BELL HELICOPTER INTERNATIONAL, Defendant.

No. S–175.

Supreme Court of Alaska.

Dec. 21, 1984.

Michael Flanigan, Clark, Walther & Flanigan, Anchorage, for plaintiffs.

Carl Winner, Robertson, Monagle, Eastaugh & Bradley, Anchorage, for defendant.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Justice.

On October 9, 1974, a helicopter manufactured by defendant Bell Helicopters, Inc. crashed in a remote area of Alaska. The plaintiff's decedents, Douglas Stuart and Donevan Harris, died in the crash. The wreckage was not discovered until August 21, 1982. Investigation revealed that the accident may have occurred as a result of a mechanical defect.

The present action was commenced against Bell in the superior court on October 6, 1982, and removed to the federal district court pursuant to 28 U.S.C. § 1441. Bell moved for partial summary judgment, contending that the claims of three of the heirs of Stuart and Harris were time-barred because they were not brought within the two year limitation period expressed in the wrongful death act, AS 09.-55.580.[1] The plaintiff argued in opposition that the doctrine known as the "discovery rule" had acted to postpone the running of the statutory period until such time as the plaintiff discovered or reasonably should have discovered the cause of the crash.

Inasmuch as the district court could find no Alaska case authority, the court certified the following question to this court pursuant to Appellate Rule 407:[2]

1. AS 09.55.580 provides in part:
When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had the person lived, against the latter for an injury done by the same act or omission. The action shall be commenced within two years after the death....

2. Appellate Rule 407 provides in part:
The supreme court may answer questions of law certified to it by ... a United States dis-

Does the reasonable failure of plaintiff to discover an element essential to her cause of action toll the running of the two year period provided by AS 09.55.580 within which to commence an action for wrongful death?

We have previously recognized that in appropriate cases a statute of limitations will not begin to run until a plaintiff "discovers, or reasonably should discover, the existence of all the elements of his cause of action." *Greater Area Incorporated v. Bookman*, 657 P.2d 828, 829 (Alaska 1982) (footnote omitted); *see also Sharrow v. Archer*, 658 P.2d 1331, 1333 (Alaska 1983). This doctrine has become known as the "discovery rule," and has been adopted by numerous other jurisdictions.[3]

We must first decide whether the discovery rule should have any application outside the professional malpractice area.[4] We conclude that it should: "[I]t is the nature of the problems faced by plaintiff in discovering his injury and its cause, and not the occupation of the defendant, that governs the applicability of the discovery

rule." *Stoleson v. United States*, 629 F.2d 1265, 1269 (7th Cir.1980).[5]

The principal issue before us is whether the discovery rule should apply to toll the two year statute of limitations for wrongful death actions contained in AS 09.55.580. This statute states in part that: "The action [for wrongful death] shall be commenced within two years after death...." We conclude that the discovery rule will toll this period of limitation because this interpretation is the only one which is consistent with the remedial character of AS 09.55.580, and which would not lead to unjust and even absurd results.

In *Haakanson v. Wakefield*, 600 P.2d 1087 (Alaska 1979), we held that the requirement that a wrongful death action be brought "within two years after the death" did not bar an action brought more than two years after the death of the decedent for the benefit of the minor children of the deceased. In reaching this conclusion we relied on the general tolling provision of AS 09.10.140 applicable to minors.[6] We did this even though it was clear that the provisions of AS 09.10.140 were limited to "an

---

trict court, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

**3.** *See, e.g., Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Kuhne v. United States*, 267 F.Supp. 649 (E.D.Tenn.1967); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421, 422 (1971); *Creviston v. General Motors Corp.*, 225 So.2d 331 (Fla.1969); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 174 (1977). *See generally* Note, *Statutes of Limitations in Occupational Disease Cases: Is Locke v. Johns-Manville A Viable Alternative to the Discovery Rule?* 39 Wash. & Lee L.Rev. 263, 264 n. 10 (citing *Burns v. Bell*, 409 A.2d 614, 616 (D.C. App.1979), for the conclusion that a majority of jurisdictions now apply some form of discovery rule).

**4.** *Bookman* involved a claim of legal malpractice and *Sharrow* involved a claim of medical malpractice.

**5.** Indeed, as *Stoleson* recognizes, the discovery rule "was not created in a medical malpractice

context and is not limited to such cases." 629 F.2d at 1269. *See also, e.g., Basque v. Yuk Lin Liau*, 50 Hawaii 397, 441 P.2d 636 (1968) (discovery rule applies to real property cases); *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394 (N.J.1973) (discovery rule applies against machine manufacturer when injured plaintiff could not discover identity of manufacturer); *Gazija v. Nicholas Jerns Co.*, 86 Wash.2d 215, 543 P.2d 338 (1975) (discovery rule applies against insurance agent for misapplication of funds).

**6.** When we decided *Haakanson*, AS 09.10.140 provided:

If a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues either (1) under the age of 19 years, or (2) insane, or (3) imprisoned on a criminal charge, or in execution under sentence of a court for a term less than his natural life, the time of the disability is not a part of the time limited for the commencement of the action. But the period within which the action may be brought is not extended in any case longer than two years after the disability ceases.

action mentioned in this chapter," that is, ch. 10 of title 9 of the Alaska Statutes, and thus the general tolling statute expressly did not apply to an action for wrongful death which was then set out in ch. 55 of title 9.

Bell argues that the two year limitation period for wrongful death actions should apply in the present case in spite of our holding in *Haakanson* that this limitation period is not absolute. In making this argument, Bell relies on cases from several jurisdictions which have explicitly rejected the proposition that the discovery rule can serve to toll the running of the statutory period for wrongful death.[7]

■ In rejecting the application of the discovery rule in wrongful death actions, these cases proceed from the assumption that wrongful death is an exclusively statutory creation. Thus, as an integral part of the statute creating the action, a period of limitations has been imposed which is a condition of the right of action. *Cadieux v. ITT*, 593 F.2d 142, 144 (1st Cir.1979). Death statutes of limitations are therefore said to bar the right of action and not merely the remedy. Restatement of Conflict of Laws § 397 comment (a) (1934); *Presslaff v. Robins*, 168 N.J.Super. 543, 403 A.2d 939, 941 (N.J.App.1979) ("The cause of action itself dies after that lapse of time," *quoting Evernham v. Selected Risks Ins. Co.*, 163 N.J.Super. 132, 394 A.2d 373, 375 (App.Div.1978)). The underlying reasoning is that wrongful death actions are created by statute in derogation of the common law and thus should be construed strictly. *See Cadieux*, 593 F.2d at 144 (The court reasoned "that the time

limit is the condition on the existence of a legislatively created cause of action unknown to the common law and therefore not subject to judicial alteration or expansion.")

Proceeding from this assumption the cases have focused on the fact that general statutes of limitation typically commence when the cause of action "accrues," whereas death statutes ordinarily state that the action must be brought within a specified period after death. The cases have reasoned that this difference in language expresses a clear legislative intent to restrict wrongful death actions to a greater extent than other tort actions.[8]

We disagree with these cases, both in their characterization of the underlying assumptions of wrongful death actions and in their interpretation of the statutory language. First, in *Haakanson* we specifically rejected the proposition that wrongful death acts should be construed narrowly because they are in derogation of the common law.[9] Further, we expressly referred to the doctrine that death statutes bar the right of action, not merely the remedy, 600 P.2d at 1091, and rejected it as a "formalistic legal abstraction." *Id.* at 1092.

Alaska's wrongful death statute is a remedial statute designed to compensate those who have suffered a direct loss because of the tortiously caused death of a benefactor. *Id.* at 1090–91. Professor Sutherland states that wrongful death statutes

represent a wholesome remedial policy that has become firmly imbedded in modern jurisprudence, and where the extent

---

7. *See, e.g., Cadieux v. Int'l Tel & Tel. Corp.*, 593 F.2d 142 (1st Cir.1979); *Stiles v. Union Carbide Corp.*, 520 F.Supp. 865 (S.D.Tex.1981); *Clark v. Prakalapakorn*, 8 Kan.App.2d 33, 648 P.2d 278 (1982); *Presslaff v. Robins*, 168 N.J.Super. 543, 403 A.2d 939 (1979); *Morano v. St. Francis Hospital*, 100 Misc.2d 621, 420 N.Y.S.2d 92 (1979); *Hubbard v. Libi*, 229 N.W.2d 82 (N.D.1975).

8. *See Cadieux*, 593 F.2d at 142; *Presslaff*, 403 A.2d at 940–41; *Morano*, 420 N.Y.S.2d at 95.

9. We stated in *Haakanson:*
   We do not find the statute to be in derogation of the common law of Alaska because, if there

were no statute, we would in all probability follow the lead of the United States Supreme Court in *Moragane v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), in which it established a maritime wrongful death action, and that of the Massachusetts Supreme Court which recognized a common law right of action in construing statutory language similar to ours. *Gaudette v. Webb* [362 Mass. 60], 284 N.E.2d at [222] 229.
600 P.2d at 1092 n. 11.

of the damages recoverable for wrongful death is measured by the actual injury sustained, these statutes should be liberally construed to accomplish their remedial purpose. But many of the decisions in the past, and a few of the later ones as well, have crippled the operation of the legislation by employing a narrow construction on the basis that these statutes are in derogation of the common law. However, the better and modern authorities are in agreement that the objective and spirit of this legislation should not be thwarted by a technical application.

3 C. Sands, Sutherland Statutory Construction § 71.05, at 337–38 (4th ed. 1973) (footnote omitted).

We now turn to the significance of the difference in language between the wrongful death statute limitation period, which runs "from death," and the general statute of limitations, which runs from the time that the cause of action accrues. Clearly, *Haakanson* held that this difference is not necessarily significant because the application of the minor tolling rule was not barred by the "from death" language. We stated that there was "no legislative intent to treat [an action for wrongful death] differently than the common law tort action," 600 P.2d at 1092, and noted our agreement, in spirit, with cases which "interpret the action as any other tort action and apply the general procedural statutes of limitations and the exceptions for disability."[10] *Id.* at 1091–92.

**10.** *Citing Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) and *Gaudette v. Webb,* 362 Mass. 60, 284 N.E.2d 222 (1972).

**11.** The United States Supreme Court in *Moragne v. States Marine Lines,* 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339, 352 (1970), stated:

As Professor Landis has said, "much of what is ordinarily regarded as 'common law' finds its source in legislative enactment." ... It has always been the duty of the common law court to perceive the impact of major legislative innovations and to interweave the new legislative policies with the inherited body of common law principles—many of them deriving from earlier legislative exertions.

The result in *Haakanson* cannot be explained as mandated by the need to reconcile two facially inconsistent, but applicable, statutes. There was no such compulsion, because, as noted above, the tolling statute did not apply to the death statute. However, a statute may form the basis for a common law rule which applies beyond the prescribed scope of the statute.[11] The inquiry in *Haakanson* was whether the minor tolling doctrine, as a matter of common law, should be applied to the death act. We answered that inquiry in the affirmative because of the essential justice of the minor tolling doctrine and because such a result was consistent with the purposes of the death act, while the contrary result was not.

There is no hierarchical difference between common law rules which are based on statutory enactments and common law rules which are based on judicial decisions. Neither stands on a higher footing than the other. Thus, the question in this case is similar to that presented in *Haakanson,* does a common law tolling rule apply to the death act?

We hold that the discovery rule does apply to the death act because of the fundamental fairness of the rule and, like the minor tolling rule, because it is consistent with the purposes of the act. The legislature did not intend that the limitation period in the death act be interpreted to reach unjust and absurd results. The same reasoning, founded on basic justice, that

The legislature does not, of course, merely enact general policies. By the terms of a statute, it also indicates its conception of the sphere within which the policy is to have effect. In many cases the scope of a statute may reflect nothing more than the dimensions of the particular problem that came to the attention of the legislature, inviting the conclusion that the legislative policy is equally applicable to other situations in which the mischief is identical.... On the other hand, the legislature may, in order to promote other, conflicting interests, prescribe with particularity the compass of the legislative aim, erecting a strong inference that territories beyond the boundaries so drawn are not to feel the impact of the new legislative dispensation.

has led us to adopt the discovery rule generally is present in wrongful death actions. It is profoundly unfair to deprive a litigant of his right to bring a lawsuit before he has had any reasonable opportunity to do so.[12]

Further, if the discovery rule is not applied to wrongful death actions, a tortfeasor whose conduct has been so grievous as to cause death would be exonerated, while another tortfeasor, guilty of the same conduct except for the fortuity that it merely caused injury, would be held responsible. *See Matter of Johns-Manville Asbestosis Cases*, 511 F.Supp. 1235 (N.D. Ill.1981). Mr. Justice Harlan, in *Moragne v. States Marine Lines*, 398 U.S. 375, 381, 90 S.Ct. 1772, 1777, 26 L.Ed.2d 339, 346 (1970), commented on such reasoning:

> Where existing law imposes a primary duty, violations of which are compensable if they cause injury, nothing in ordinary notions of justice suggests that a violation should be nonactionable simply because it was serious enough to cause death. On the contrary, that rule has been criticized ever since its inception as described in such terms as "barbarous."

We will not attribute an intent to adopt such an irrational result[13] to the legislature.

While we base our decision on the reasons stated above, we note that at least two other jurisdictions with wrongful death statutes similar to Alaska's[14] hold that the discovery rule may toll the wrongful death statute of limitations.[15]

In conclusion, we answer the question certified to us by the United States District Court for the District of Alaska in the AFFIRMATIVE.

MOORE, Justice, dissenting.

I dissent from the majority's holding that the "discovery rule" applies to toll the two-year period of limitations provided by AS 09.55.580 for a wrongful death action. The majority opinion conveniently ignores dispositive facts and misconstrues our decision in *Haakanson v. Wakefield Seafoods, Inc.*, 600 P.2d 1087 (Alaska 1979), in order to reach its decision.

Plaintiff's decedents Douglas Stuart and Donevan Harris died when a helicopter manufactured by defendant Bell Helicopter International (hereafter Bell) and operated by Evergreen Helicopters (hereafter Evergreen) crashed near McGrath, Alaska on October 9, 1974. Subsequently, the families of the plaintiff's decedents received

**12.** *Myers v. McDonald,* 635 P.2d 84, 87 (Utah 1981), states in this regard:

> If the plaintiffs are denied the opportunity of proceeding with [the wrongful death action because of not applying the discovery rule], the law would be in the untenable position of having created a remedy for plaintiffs and then barring them from exercising it before they had any practical opportunity to do so.

In determining whether the discovery rule should apply to the Federal Employers Liability Act, the United States Supreme Court referred to the question of legislative intent as follows:

> We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights.

*Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282, 1292 (1949).

**13.** *Eisenmann v. Cantor Bros., Inc.,* 567 F.Supp. 1347, 1352 (N.D.Ill.1983), termed such a limita-

tion on the Illinois wrongful death statute "absurd" and quoted *Matter of Johns-Manville Asbestosis Cases,* 511 F.Supp. 1235, 1238 (N.D.Ill. 1981), as follows:

> [W]e would have the anomaly of an action being barred before the cause of action even arose! Mr. Bumble ("The law is a ass, a idiot") would have prevailed once again.

**14.** In Illinois and Utah, the wrongful death statutes of limitations are an integral part of the death statutes and the period runs from death. *See* Ill.Ann.Stat. ch. 70, § 2(c) (Smith-Hurd Supp.1984); Utah Code Ann. § 78–12–28 (1953).

**15.** *Eisenmann v. Cantor Brothers, Inc.,* 567 F.Supp. 1347 (N.D.Ill.1983); *Matter of Johns-Manville Asbestosis Cases,* 511 F.Supp. 1235 (N.D.Ill.1981); *Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686 (Ill.App.1976); *Fure v. Sherman Hospital,* 64 Ill.App.3d 259, 21 Ill.Dec. 50, 380 N.E.2d 1376 (1970); *Myers v. McDonald,* 635 P.2d 84 (Utah 1981); *see also Frederick v. Calbio Pharmaceuticals,* 89 Cal. App.3d 49, 152 Cal.Rptr. 292 (1979); *Shaughnessy v. Spray,* 55 Or.App. 42, 637 P.2d 182 (Or.App.1981).

presumptive certificates of death.[1] In February and March 1976 the administrators of the decedents' estates filed claims against Evergreen. The parties settled these claims out of court in March 1977. The administrators brought no action against Bell. The helicopter's wreckage was found on August 21, 1982, more than five years after the settlement. On October 18, 1982 plaintiff filed the present action against Bell alleging that a mechanical defect caused the accident.

Alaska Statute 09.55.580 provides that a wrongful death "action shall be commenced within two years after the death . . . ." The period of limitation contained in the statute represents a legislative judgment that affords plaintiffs a reasonable time to present their claims, while protecting defendants and courts from the potential injustice of dealing with stale claims. Statutes of limitation "encourage promptness in the prosecution of actions" and "attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses." *Byrne v. Ogle*, 488 P.2d 716, 718 (Alaska 1971). This court should not blithely interfere with the balance struck by the legislature.

We addressed an analogous statute of limitations problem in *Kodiak Electric Ass'n, Inc. v. DeLaval Turbine, Inc.*, 694 P.2d 150 (Alaska 1984). In that case, the trial court held that the two-year limitations period of AS 09.10.070 applied to Kodiak Electric's strict liability and negligence claims. We reversed the trial court based on the plain language of AS 09.10.050, holding that its six-year limitations period applied to actions for injury of personal property. We rejected DeLaval's policy argument that the shorter limitations period was preferable. "[I]t is not this court's function to consider the merits of a longer or shorter limitations period when the statute is clear

and unambiguous and no contrary legislative intent has been demonstrated." *Id.*, at 156. I fail to understand why the majority does not follow this sound policy when addressing the plain language of the wrongful death statute. Concern about the applicable statute of limitations should be addressed to the legislature, not this court. *Id.*, at 155 n. 9.

In *Haakanson v. Wakefield Seafoods, Inc.*, 600 P.2d 1087 (Alaska 1979), we held that Alaska's general tolling statute, AS 09.10.140, applied to extend the time limit in the wrongful death statute, AS 09.55.-580, for bringing an action. For purposes of applying AS 09.10.140, we concluded there was no legislative intent to treat an action for wrongful death differently than the common law tort actions. *Id.* at 1092.

In *Haakanson*, we construed the limitation period in the wrongful death statute *in pari materia* with the legislative directive expressed in the general tolling statute. We reasoned:

> The *legislature has found*, however, that certain circumstances outweigh the policies underlying these statutes of limitations. . . . This statute [AS 09.10.140] expresses the public policy that favors safeguarding the interests of minors.

*Id.* at 1090. (Emphasis added).

Based on legislative policy, therefore, this court held that the disability of a minor statutory beneficiary tolled the running of the limitations period in the wrongful death statute.

Despite the express statutory language of the wrongful death statute, the majority in the present case applies the judicially created discovery rule to toll the limitations period. As its only justification, the majority attempts to recast *Haakanson* as a decision based on a common law interpretation.[2] Although *Haakanson* involved in-

---

**1.** The record does not indicate the date of issuance, but the parties do not dispute that the death certificates were issued more than two years before the complaint was filed in the present lawsuit.

**2.** In *Haakanson*, we stated: "Since Alaska has a comprehensive wrongful death statute, whether or not there is a common law right of action is immaterial except for any difference in construction of the statute based on the contention

terpretation of a tolling statute for minors, the majority refers to this tolling statute as if it were a common law doctrine or rule. The majority ignores Justice Harlan's admonition:

> On the other hand, the legislature may, in order to promote other, conflicting interests, prescribe with particularity the compass of the legislative aim, erecting a strong inference that territories beyond the boundaries so drawn are not to feel the impact of the new legislative dispensation.

*Moragne v. States Marine Lines,* 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339, 352 (1970).

The Alaska Legislature has provided in AS 09.10.140 that the disabilities of minority, insanity, and imprisonment may serve to toll the statute of limitation. Despite the legislature's awareness of Alaska's high number of light aircraft and light aircraft accidents, it has declined to add lost aircraft as a new category to AS 09.-10.140.

The majority claims the adoption of the discovery rule is fundamentally fair and consistent with the purposes of the wrongful death act. They claim "it is fundamentally unfair to deprive a litigant of his right to bring a lawsuit before he has had any reasonable opportunity to do so." This broad truism does not reflect the facts of the present case. As previously stated, plaintiff filed claims based on this accident and settled with another defendant over five years before filing this lawsuit. At that time, plaintiff could have also filed suit against Bell based on a theory such as *res ipsa loquitur. See, e.g., Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686 (Ill.App.1976).

The families of the plaintiff's decedents received presumptive certificates of death. Plaintiff did not have to wait until the helicopter's wreckage was fortuitously discovered in order to bring her action. In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the United States Supreme Court denied relief to a tardy plaintiff under the Federal Torts Claim Act. The Court stated about the plaintiff:

> If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*Id.,* 444 U.S. at 123–125, 100 S.Ct. at 360–361, 62 L.Ed.2d at 270–271. *Kubrick's* reasoning aptly applies to this case.

Application of a statute of limitation may often make it impossible to enforce a previously valid claim. However, the legislature unequivocally prescribed that a cause of action for wrongful death accrues on the date of death and we should enforce that mandate. Preclusion of a legal remedy alone does not justify a judicial exception to the statute. To engraft the discovery rule on AS 09.55.580 completely ignores the statutory directive.

that it is in derogation of the common law." *Id.* at 1092, n. 11.