NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1949-15T4

DEBRA WARREN, Executrix
of the ESTATE OF ROBERT
WARREN and DEBRA WARREN,
Individually,

     Plaintiffs-Respondents,

v.

CHRISTOPHER P. MUENZEN, M.D.,
CHARLES CAREY, P.A., and
CHRISTOPHER P. MUENZEN, M.D.,
P.A.,

     Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 7, 2016**
>
> **APPELLATE DIVISION**

Argued October 6, 2016 — Decided December 7, 2016

Before Judges Messano, Guadagno and Suter.

On appeal from the Superior Court of New
Jersey, Law Division, Morris County, Docket
No. L-0207-13.

William L. Brennan argued the cause for
appellants (The Law Office of William L.
Brennan, attorneys; Mr. Brennan, of counsel
and on the briefs; John Kilbride and Abbey
True Harris, on the briefs).

John J. Ratkowitz argued the cause for
respondents (Starr, Gern, Davison & Rubin,
P.C., attorneys; Mr. Ratkowitz, of counsel
and on the briefs; Robert C. Sanfilippo, on
the briefs).

Andres & Berger, P.C., attorneys for amicus
curiae New Jersey Association for Justice

(Kenneth G. Andres, Jr., of counsel and on the brief; Tommie Ann Gibney and Abraham Tran, on the brief).

Drinker Biddle & Reath, L.L.P., attorneys for amicus curiae New Jersey Hospital Association (Ross A. Lewin, of counsel and on the brief; James C. Jones, on the brief).

Hill Wallack, L.L.P., attorneys for amicus curiae Property Casualty Insurers Association of America (Todd J. Leon, of counsel and on the brief; James Harry Oliverio, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

By leave granted, defendants Christopher P. Muenzen, M.D., and Christopher P. Muenzen, M.D., PA (collectively, defendant), appeal from the Law Division's December 1, 2015 order denying partial summary judgment based on the statute of limitations (SOL) applicable to the New Jersey Survivor Act (the Survivor Act), N.J.S.A. 2A:15-3.[1] For purposes of our review, we consider the motion record in a light most favorable to plaintiff, Debra Warren, who brought suit individually and as executrix of the estate of her late husband, Robert Warren. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016); R. 4:46-2(c).

---

[1] Defendant Charles Carey, P.A. (Carey), was granted summary judgment for reasons unrelated to the issues raised on appeal, but was named as a moving party when defendant sought leave to appeal. Plaintiff has not cross-appealed as to Carey.

In 2007, complaining of migraine headaches, Robert was seen by defendant, his personal physician.[2] As part of the examination, blood samples were taken and sent for testing. Robert's PSA[3] level was 15.4, significantly higher than normal, and recognized by defendant in his deposition as indicative of prostate cancer. It is disputed whether defendant conveyed the significance of the reading to Robert at this time.

In September 2009, Robert's complaints of groin pain caused another visit to defendant. At this point, Robert's PSA reading was 1244.88. Following further examination in October, defendant diagnosed Robert with prostate cancer, which was later confirmed by biopsy. Over the ensuing two years, despite chemotherapy and other treatment, the cancer progressed and metastasized to Robert's brain and spine. He died on September 27, 2011, as a result of complications from the cancer.

Plaintiff filed suit on January 18, 2013, alleging defendant was medically negligent. In counts one and two, plaintiff sought pecuniary damages on behalf of her husband's estate pursuant to the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6 (the WDA). In count three, plaintiff sought damages for

---

[2] To avoid confusion, we may use plaintiff's decedent's first name. We intend no disrespect by this informality.

[3] PSA stands for Prostate-Specific Antigen.

Robert's pain, suffering, medical expenses and lost earnings while alive, and, in count four, she sought damages for her loss of consortium during her husband's life. Finally, in count five, plaintiff sought damages for the severe emotional distress she suffered from witnessing the effects of her husband's illness. Portee v. Jaffee, 84 N.J. 88 (1980). In addition to his general denial, defendant affirmatively pled the SOL as a defense.

Defendant subsequently moved for summary judgment, arguing that counts three, four and five were barred by the two-year SOL applicable to medical malpractice claims. See N.J.S.A. 2A:14-2(a) (requiring a claim for personal injury to be brought within two years of accrual).[4] After considering oral argument, the judge granted the motion as to count five but denied the motion as to counts three and four, explaining his reasoning in a written opinion we discuss more fully below.

---

[4] For purposes of the motion and this appeal, defendant acknowledges applicability of the discovery rule. See, e.g., Guichardo v. Rubinfeld, 177 N.J. 45, 51 (2003) ("Although the discovery rule does not require 'knowledge of a specific basis for legal liability or a provable cause of action,' it does require 'knowledge not only of the injury but also that another is at fault.'") (quoting Martinez v. Cooper Hosp.-Univ. Med. Ctr., 163 N.J. 45, 52 (2000)). Plaintiff's cause of action, therefore, did not accrue until September or October 2009.

We granted defendant's motion for leave to appeal.[5] Additionally, we permitted amici New Jersey Association for Justice, New Jersey Hospital Association (NJHA) and Property Casualty Insurers Association of America to file briefs.

I.

We set forth the legal framework. Although actions under the WDA and the Survivor Act "arise from the identical occurrence, i.e., the death of the plaintiff, they serve different purposes and are designed to provide a remedy to different parties." Smith v. Whitaker, 160 N.J. 221, 231 (1999) (citing Soden v. Trenton & Mercer Cty. Traction Co., 101 N.J.L. 393, 398-99 (E. & A. 1925)). "[T]he [WDA] provides to decedent's heirs a right of recovery for pecuniary damages for their direct losses as a result of their relative's death due to the tortious conduct of another." Aronberg v. Tolbert, 207 N.J. 587, 593 (2011). Any recovery passes directly to the decedent's heirs, not through his or her estate. Ibid. (citing Alfone v. Sarno, 87 N.J. 99, 107-08 (1981); see also N.J.S.A. 2A:31-4).

"Unlike a wrongful death action, which is a derivative action arising in favor of beneficiaries named under that act, the Survivor[] Act preserves to the decedent's estate any

_____

[5] Plaintiff has not cross-appealed from the dismissal of count five of the complaint.

personal cause of action that decedent would have had if he or she had survived." Smith, supra, 160 N.J. at 233 (internal citation omitted). "The survival action merely 'perpetuat[es] the right of action which the deceased himself would have had, to redress his own injuries, but for his death.'" Alfone, supra, 87 N.J. at 108 (alteration in original) (emphasis added) (quoting 2 F. Harper & F. James, The Law of Torts § 24.2 at 1287 (1956)). As in this case, the two distinct claims are frequently pled together in one action, and the WDA claim is cognizable even when the Survivor Act claim is barred by the SOL. Gershon, Adm'x Ad Prosequendum for Estate of Pietroluongo v. Regency Diving Ctr., 368 N.J. Super. 237, 245-246 (App. Div. 2004) (citing Miller v. Estate of Sperling, 166 N.J. 370, 386-87 (2001)).

The WDA has always included a specific SOL. See L. 1848 p. 151, § 2 (providing "every action shall be commenced within twelve calendar months after the death of such deceased person"). Currently, the WDA provides:

> Every action brought under this chapter shall be commenced within [two] years after the death of the decedent, and not thereafter, provided, however, that if the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reason of insanity or adjudicated delinquent, the action may be brought at any time.

A-1949-15T4

[<u>N.J.S.A.</u> 2A:31-3 (emphasis added).]

The portion we emphasize was the result of an amendment enacted by the Legislature in 2000.  <u>L.</u> 2000, <u>c.</u> 157 (Nov. 17, 2000). At the time, the Legislature made clear that the bill's purpose was to "enable the family of a murder victim to sue if at some time in the future the person who committed the murder acquires substantial assets."  <u>Senate Judiciary Committee</u>, <u>Statement to S. 1125</u> (June 22, 2000); <u>see also</u> <u>Assembly Judiciary Committee</u>, <u>Statement to A. 1934</u> (June 8, 2000) ("Eliminating the statute of limitations for these wrongful death suits will preserve the right of murder and manslaughter victims' families to sue at some future date.").

Prior to 2010, the Survivor Act contained no explicit SOL. It provided in full:

> Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living.
>
> In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

[N.J.S.A. 2A:15-3 (2009).]

The language of the first paragraph has remained virtually unchanged from when the statute was first enacted in 1855. See Canino v. New York News, Inc., 96 N.J. 189, 192 n.1 (1984). The second paragraph, which spoke specifically to causes of action "where death resulted from injuries[,]" was not added by the Legislature until 1969. L. 1969, c. 266 (Jan. 12, 1970).[6]

In 2009, however, the Legislature added the following provision to the Survivor Act (the 2009 Amendment):

> Every action brought under this chapter shall be commenced within two years after the death of the decedent, and not thereafter, provided, however, that if the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reason of insanity or adjudicated delinquent, the action may be brought at any time.
>
> [L. 2009, c. 266 (Jan. 17, 2010).]

The intent of the Legislature was quite clear. Recognizing that the 2000 amendment to the WDA "applied to only one of the two types of civil actions that may be brought against persons responsible for a wrongful death[,]" the Legislature intended to

---

[6] The 1969 amendment also added funeral and burial expenses as cognizable damages due the estate. The Legislature added similar language to N.J.S.A. 2A:31-5 in 1967. See Schmoll v. Creecy, 104 N.J. Super. 126, 138-39 (App. Div.), rev'd on other grounds, 54 N.J. 194 (1969).

"address[] the other type of civil action[,]" by "amend[ing] the 'Survivor[] Act' to eliminate the two-year statute of limitations for cases where the death resulted from murder, manslaughter or aggravated manslaughter and, thus, conform this action to the provisions of [the WDA]." Senate Judiciary Committee, Statement to S. 2763 (May 18, 2009) (emphasis added); see also Assembly Judiciary Committee, Statement to A. 4158 (Jan. 4, 2010) (noting the bill was intended to "address[] th[e] oversight" when the WDA was amended in 2000 "by eliminating the [SOL] for certain actions brought under the 'Survivor[] Act'") (emphasis added).

## II.

### A.

The motion judge determined the SOL began to run in October 2009, which was when Robert knew or should have known that defendant's alleged failure to warn him earlier of the significance of the elevated PSA reading gave rise to a claim for medical negligence. As a result, plaintiff's suit should have been brought by October 2011 at the latest, but it was not filed until January 2013. Plaintiff argued the plain language of the Survivor Act meant her claim was timely, because it was filed within two years of Robert's death. The judge rejected that contention because accepting plaintiff's literal reading

would yield an absurd result — "[c]laimants would be filing lawsuits years after the cause of action accrued and . . . the [SOL] would be inutile and . . . incompatible with the legislative design."

However, also rejecting defendant's contentions, the judge reasoned:

> When one reads the [Survivor Act] as a whole, it seems clear . . . that what the [L]egislature intended is that the decedent **must** have a cause of action that is not barred by the statute of limitations when he dies. If the person dies with a claim not time-barred, then from the date of death, the administrator or executor has the extended two years from the date of death to file survival actions (it being understood, however, that the two[-]year limitation does not apply when the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reasons of insanity or adjudicated delinquent).
>
> [(Emphasis in original).]

The judge further stated that "[n]owhere does the statute require that the administrator or executor must bring suit within the original [two-]year limitation of time nor is there case law to support such a position."

The judge concluded Robert had a cognizable cause of action against defendant for medical negligence that was not time-barred when Robert died in September 2011. The judge determined as a result that plaintiff's Survivor Act claims, filed within

two years of Robert's death, should not be dismissed. He entered a conforming order, and we granted defendant's motion for leave to appeal.

B.

Defendant argues that as a result of the 2009 Amendment, the Survivor Act is "internally inconsistent" because it limits the executrix's claims to those a decedent would have had if he had lived, but permits suit to be filed years thereafter, as long as a complaint is brought within two years of death. Defendant asserts the motion judge's interpretation of the statute fails to avert the absurd and unfair result that claims could be made by administrators and executors many years after the alleged tortious act that resulted in damages. Defendant urges us to consider the legislative history of the 2009 Amendment in order to properly construe the statute and ensure the Legislature's intent, which he argues was only to permit Survivor Act claims resulting from criminal homicides to be brought at any time.

Plaintiff urges us to affirm, continuing to assert, as she did before the motion judge, that the plain language of the 2009 Amendment demonstrates the Legislature's intent to provide a two-year SOL to "[e]very action" brought under the Survivor Act. N.J.S.A. 2A:15-3. She argues that such a construction results

11

in no more absurd a result than occasioned by the WDA's SOL. In other words, pursuant to the WDA, the Legislature permitted heirs of a decedent to bring suit for tortious conduct that may have occurred years earlier, requiring only that the conduct have caused death and the suit be filed within two years of death. Amicus New Jersey Association for Justice essentially echoes plaintiff's arguments.

Amicus Property Casualty Insurers Association of America reiterate defendant's contentions and further argues that the 2009 Amendment creates uncertainty for both insurers and insureds as to the coverage provided by their policies. Finally, the NJHA argues that proper construction of the Survivor Act requires consideration of not only N.J.S.A. 2A:14-2, but also N.J.S.A. 2A:14-1, the six-year SOL governing all claims for damages to real and personal property, and N.J.S.A. 2A:14-23.1, which tolls the operation of all statutes of limitation for six-months following death.

We have considered these arguments in light of the record and applicable legal standards. We reverse.

C.

"An appellate court reviews an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing W.J.A.

v. D.A., 210 N.J. 229, 237-38 (2012); Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010)). We "identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)). We review the judge's interpretation of "the law de novo and owe no deference to the trial court . . . if [it has] wrongly interpreted a statute." Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009).

"The fundamental objective of statutory interpretation is to identify and promote the Legislature's intent." Parsons v. Mullica Twp. Bd. of Educ., 226 N.J. 297, 307 (2016) (citing State v. Gelman, 195 N.J. 475, 482 (2008)) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "In construing any statute, we must give words 'their ordinary meaning and significance,' recognizing that generally the statutory language is 'the best indicator of [the Legislature's] intent.'" Tumpson v. Farina, 218 N.J. 450, 467 (2014) (alteration in original) (quoting DiProspero, supra, 183 N.J. at 492).

"However, not every statute is a model of clarity. When the statutory language is sufficiently ambiguous that it may be susceptible to more than one plausible interpretation, we may turn to such extrinsic guides as legislative history, including

13                                                          A-1949-15T4

sponsor statements and committee reports."  Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012) (citing Burns v. Belafsky, 166 N.J. 466, 473 (2001)).  "We may also turn to extrinsic guides if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme."  Ibid. (citing Burnett v. Cty. of Bergen, 198 N.J. 408, 424-25 (2008); State v. Provenzano, 34 N.J. 318, 322 (1961)).

In this case, plaintiff's contention, premised upon the literal language of the statute, leads to an absurd result that ignores the historical purposes of the Survivor Act and existing precedent.  As the Court made clear in Canino, both the WDA, first adopted in New Jersey in 1848, and the Survivor Act, first adopted in 1855, were intended to abrogate the common law maxim that death abated all causes of action.  96 N.J. at 191-92.[7] However, "[t]here is an elementary difference between the two remedies . . . ."  Id. at 194.

---

[7] The Court in Canino said the WDA "created a new cause of action." 96 N.J. at 194 (quoting Alfone, supra, 87 N.J. at 107). However, in Lafage v. Jani, 166 N.J. 412, 438 (2001), the Court held that New Jersey recognized a cause of action for wrongful death at common law.  The Court has since reiterated that the WDA created "a remedy that did not exist at common law."  Beim v. Hulfish, 216 N.J. 484, 498 (2014) (citing Johnson v. Dobrosky, 187 N.J. 594, 605 (2006) (citing Negron v. Llarena, 156 N.J. 296, 308 (1998)); Alfone, supra, 87 N.J. at 107).

One difference is that, unlike the WDA, which recognizes a cause of action only "[w]hen the death of a person is caused by a wrongful act, neglect or default," N.J.S.A. 2A:31-1, a claim brought under the Survivor Act need not be based on tortious conduct that results in death. For example, pursuant to the first paragraph of the Survivor Act, an executor or administrator may bring "an action for any trespass done to the person or property, real or personal," of the decedent as the decedent "would have [brought] if he was living." N.J.S.A. 2A:15-3 (emphasis added).

In Canino, supra, 96 N.J. at 198, the Court recognized that pursuant to N.J.S.A. 2A:15-3, a cause of action for libel or slander was not abated by the claimant's death and could be prosecuted by his executrix. Similarly, in Fricke v. Geladaris, Inc., 221 N.J. Super. 49, 50 (App. Div. 1987), we held that a malicious prosecution claim did not abate upon death and was actionable under the Survivor Act.

Under the construction of the Survivor Act urged by plaintiff, a libel, slander or malicious prosecution that occurred during the decedent's life would be actionable decades after the offending conduct, as long as it was filed within two years of death. Indeed, under plaintiff's interpretation of the 2009 Amendment, an action for personal injury that never

resulted in death would be actionable decades later if brought by a plaintiff's estate within two years of his or her death. We are certain the Legislature never intended such absurd results when it amended the statute in 2009.

For a number of reasons, we also disagree with the motion judge's interpretation of the 2009 Amendment. Initially, the judge failed to recognize significant precedent to the contrary when he wrote there was no "case law to support . . . [defendant's] position" that prior to the 2009 Amendment, the Survivor Act incorporated the SOL from the underlying cause of action. In Soden, supra, 101 N.J.L. at 399, the court specifically recognized the different SOLs in the WDA and the Survivor Act: "It is significant . . . that the limitation under the [WDA] runs from the death, while under the [Survivor Act] the limitation runs from the time of the injury inflicted." In Kotkin v. Caprio, 65 N.J. Super. 453, 458 (App. Div. 1961), we said

> [u]nder our statutes, when the injured person dies as a result of the accident while he still has a cause of action for his injuries, the cause of action for his injuries passes to his estate, while a new and separate cause of action, with its own statute of limitations, arises in favor of the beneficiaries named in the [WDA].
>
> [(Emphasis added).]

In a case bearing some factual similarities to this, we held that a medical malpractice claim, filed by a decedent more than two years after being diagnosed with melanoma and prosecuted by his executrix after his death, was time-barred by application of the SOL contained in N.J.S.A. 2A:14-2(a). Silverman v. Lathrop, 168 N.J. Super. 333, 334-36 (App. Div. 1979); see also Troum v. Newark Beth Israel Med. Ctr., 338 N.J. Super. 1, 27 (App. Div. 2001) (holding that the plaintiff's survival action was barred by the SOL where he failed to file a malpractice claim within two years of knowing a tainted blood product was administered during surgery); Lawlor v. Cloverleaf Mem'l Park, Inc., 101 N.J. Super. 134, 148 (Law Div. 1968) ("[U]nder the Survival Act, an action must be commenced by the decedent, or his estate, within two years of the alleged wrongful act."), rev'd on other grounds, 106 N.J. Super. 374 (App. Div. 1969), rev'd on other grounds, 56 N.J. 326 (1970).

In Miller, supra, 166 N.J. at 372, the plaintiff brought a malpractice suit under the WDA against the doctor who had treated his wife more than a decade earlier. The Court recognized that at the time of her death, plaintiff's wife's malpractice suit would have been time-barred because the two-year SOL in N.J.S.A. 2A:14-2(a) had long expired. Id. at 373-74. In reversing the grant of summary judgment on the

plaintiff's WDA claim, the court held that "a wrongful death claim is an independent cause of action that cannot be extinguished by the failure of a decedent to maintain a medical malpractice action within the applicable limitations period . . . ."  <u>Id.</u> at 372.  In short, prior to the 2009 Amendment, our case law made clear that the SOL applicable to a particular cause of action was equally applicable to a Survivor Act claim maintained after death.

We acknowledge that the motion judge thoughtfully struggled to give import to all the language contained in the 2009 Amendment.  <u>See, e.g.</u>, <u>DKM Residential Props. Corp. v. Twp. of Montgomery</u>, 182 <u>N.J.</u> 296, 307 (2005) ("When interpreting a statute . . . we endeavor to give meaning to all words . . . .") (citing <u>Franklin Tower One L.L.C. v. N.M.</u>, 157 <u>N.J.</u> 602, 613 (1999)).  He reasoned plaintiff had a potential cause of action under <u>N.J.S.A.</u> 2A:15-3 if, at the time of his death, Robert had a cause of action "if he had lived."  The judge further reasoned that the 2009 Amendment defined a new SOL, i.e., plaintiff had two years after Robert's death to bring suit.  This construction avoided the absurd result plaintiff urged since every claim brought under the Survivor Act could not be maintained unless two conditions were met:  decedent must have possessed a viable claim at the time of death and suit was brought within two years

of death. However, the judge's construction nullifies existing SOLs found elsewhere in our statutes, ignores prior legislation intended to address the impact of death upon existing SOLs and greatly expands the Legislature's express, limited purpose for enacting the 2009 Amendment.

Amicus NJHA notes that, in certain cases, the judge's construction of the 2009 Amendment has the unintended consequence of nullifying SOLs contained in N.J.S.A. 2A:14-1 and 2A:14-2. We agree.

For example, N.J.S.A. 2A:14-1 provides in pertinent part:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, [or] for any tortious injury to the rights of another not stated in [N.J.S.A.] 2A:14-2 and 2A:14-3 . . . shall be commenced within 6 years next after the cause of any such action shall have accrued.

This SOL applies to numerous causes of action that are, per force, actionable under the Survivor Act, because they seek damages for a "trespass done to the person or property, real or personal . . . ." N.J.S.A. 2A:15-3. For example, if a decedent's property was flooded by his neighbor's diversion of storm water, pursuant to N.J.S.A. 2A:14-1, his estate would be required to file suit for trespass within six years of the event. However, under the motion judge's construction of the

2009 Amendment, if the decedent died one day before the six-year statue expired, his estate could file suit any time within the next two years, thereby effectively expanding the SOL to eight-years minus one day.

Similarly, the SOL in personal injury actions would be extended in circumstances where the tortious conduct did not result in death. By way of example, assume the decedent is significantly injured in an automobile accident, but lives for one year and 363 days before dying from an unrelated heart attack. Under the judge's construction of the 2009 Amendment, plaintiff's executor could file suit for the injuries sustained by plaintiff in the car accident nearly four years after the event, even though N.J.S.A. 2A:14-2(a) requires suit to be filed within two years.

Finally, under N.J.S.A. 2A:14-3, every action for libel or slander must be commenced within one year of publication of the libel or slander. As already noted, the Court in Canino recognized the estate's right to pursue a survival action for libel or slander. Under the reasoning employed by the motion judge, if a plaintiff died within one year of the libelous

publication, his estate would have two more years to bring the action.[8]

In short, the motion judge's construction of the 2009 Amendment effectively extends the SOL applicable to numerous causes of action, not themselves dependent on death, based solely upon the happenstance of death within the limitations period. Such an interpretation does not serve the well-recognized purposes of every SOL, namely "to reduce uncertainty concerning the timeliness of a cause of action[,]" McGrogan v. Till, 167 N.J. 414, 426 (2001), and "eliminat[e] stale claims and creat[e] repose." Sasco 1997 Ni L.L.C. v. Zudkewich, 166 N.J. 579, 591 (2001). Nothing in the legislative history of the 2009 Amendment suggests the Legislature intended that result.

Additionally, the judge failed to consider N.J.S.A. 2A:14-23.1. That statute, enacted in 1977, specifically extends for six months after death the applicable SOL for any "cause of action belonging to a decedent which had not been barred as of the date of his death," and for any "cause of action which . . . would have been barred less than [six] months after death."

---

[8] The Court recently rejected an invitation to extend the one-year SOL applicable to defamation actions on equitable grounds and left any amendment to the Legislature. Nuwave Inv. Corp. v. Hyman Beck & Co., 221 N.J. 495, 500-01 (2015). It is inconceivable that the 2009 Amendment intended to essentially triple the SOL period in defamation claims.

_Ibid._ The legislation was intended to adopt a provision of the Uniform Probate Code that had been approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, Introductory Statement to A. 1709, 210th Leg. (Feb. 4, 2002), and serves the salutary purpose of providing executors and administrators with a limited period of time after death to evaluate potential claims available to the estate.

The motion judge's interpretation of the 2009 Amendment would implicitly repeal N.J.S.A. 2A:14-23.1 with respect to every cause of action cognizable under the Survivor Act. There is nothing in the legislative history of the 2009 Amendment that indicates the Legislature intended this result. See Brewer v. Porch, 53 N.J. 167, 173 (1969) (noting that implied repealers are not favored in the law). Instead of having six months after death to commence a suit based on a cause of action the decedent possessed at death, the executor would now have two years after the date of death to commence the action.

As noted above, the legislative purpose for enacting the 2009 Amendment was not to establish a new two-year SOL that commenced upon death for all claims brought under the Survivor Act. Rather, the Legislature's stated purpose was only to eliminate any SOL that already existed for a Survivor Act claim

in certain, limited situations, i.e., those "cases where the death resulted from murder, manslaughter or aggravated manslaughter." Statement to S. 2763, supra; see also Statement to A. 4158, supra, (the amendment was intended to "eliminate[e] the [SOL] for certain actions brought under the 'Survivor[] Act'") (emphasis added).

Lastly, we recognize a generally accepted canon of statutory interpretation: "In interpreting a statute courts should avoid a construction that would render 'any word in the statute to be inoperative, superfluous or meaningless, or to mean something other than its ordinary meaning.'" Bergen Commer. Bank v. Sisler, 157 N.J. 188, 204 (1999) (quoting In re Estate of Post, 282 N.J. Super. 59, 72 (App. Div. 1995)). Our interpretation of the 2009 Amendment renders its first phrase — "[e]very action brought under this chapter shall be commenced within two years after the death of the decedent, and not thereafter" — superfluous. N.J.S.A. 2A:15-3. However, we are firmly convinced this case presents a classic example where "[t]he spirit of the legislative direction prevails over the literal sense of the terms." Perrelli v. Pastorelle, 206 N.J. 193, 208 (2011) (quoting New Capitol Bar & Grill Corp. v. Div. of Emp't Sec., 25 N.J. 155, 160 (1957)).

For the foregoing reasons, we reverse the order under review and remand the matter to the Law Division to enter an order dismissing counts three and four of the complaint with prejudice because they are time-barred.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1949-15T4